**WRIGHT, FINLAY & ZAK, LLP**
Steven K. Linkon, Esq., SBN 101056
Arnold L. Graff, Esq., SBN 269170
4665 MacArthur Court, Suite 200
Newport Beach, CA  92660
Tel: (949) 477-5050; Fax: (949) 608-9142
slinkon@wrightlegal.net

Attorneys for Secured Creditor, JPMorgan Chase

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>Columbia Asthma & Allergy Clinic I, PC;) *fka* Columbia Asthma and Allergy Clinic, LLC.; *aka* Asthma and Allergy Clinic; *fka* Columbia Asthma and Allergy Clinic, Inc.;) *aka* Sanjeev Jain dba Asthma and Allergy;) *aka* Columbia Asthma & Allergy Clinic;) *aka* Columbia Asthma and Allergy Clinic;) *aka* Columbia Asthma,<br><br>Debtor-in-Possession. | Bankruptcy Case No.: 2:23-bk-10579-VZ<br><br>Chapter 11<br><br>**JPMORGAN CHASE BANK'S OPPOSITION TO LANDLORD DEUTSCHER MOTION TO CONVERT CASE TO CH. 7; MEMORANDUM OF LAW AND DECLARATION OF STEVEN K. LINKON IN SUPPORT**<br><br>**Hearing Information**<br>Date: July 25, 2023<br>Time: 11:00 a.m.<br>Place: Ctrm 1368<br>255 E. Temple St.<br>L.A., CA 90012 |

Secured Creditor, JPMorgan Chase Bank, N.A., ("Chase") objects to the relief sought by Landlords Wayne C. Deutscher and Jennifer L. Deutscher ("Deutscher") for the conversion of this case to Ch. 7, and instead supports the Motion of the United States Trustee to dismiss this case, because a dismissal is in the "best interest of creditors and the estate." *See* 11 USC § 1112(b)(1).

**Background of Chase's Claims:**

1.      Chase made seven business loans to Columbia Asthma & Allergy Clinic, LLC [1] and Columbia Asthma & Allergy Clinic I, PC (collectively, the "Borrower"). The loans are secured by Continuing Security agreements perfected by UCC 1 filings with the Washington and California Secretary of State. Chase's secured claim is evidenced by a Proof of Claim filed as Claim no. 14-1, including the exhibits thereto (the "Chase Secured Claim").[2],[3] The cumulative outstanding balance of the seven loans is 1,777,706.88. The seven Chase loans are secured by all assets of the Debtor. *See*, Declaration of Steven K. Linkon ("Linkon Decl."), ¶ 2.

**Background of the Case**

2.      The Debtor operates three medical clinics specializing in the treatment of Allergy and Asthma cases. The clinics are at (1) 3448 Mowry Avenue, Fremont, CA 94538; (2) 24 7677 Oakport Street, Suite 105, Oakland, CA 94621; and (3) 80 Arch Street, Redwood City, CA 94062. Deutscher is the landlord for the Fremont location.

3.      In the Debtor's Subchapter V Status Report and in other pleadings filed in this case, Debtor explains that creditor Itria Ventures, LLC ("Itria") made a high interest rate loan to Debtor in exchange for their receivables. Itria began intercepting payments due Debtor from twenty plus insurance companies that pay medical claims to the Debtor on behalf of insured patients treated at Debtor's clinics. This interception of receivables continued post-petition and an adversary proceeding was filed. The Debtor's loss of its receivables to Itria was not halted for several months into the case. It is not clear that the Debtor's receivables wrongly intercepted

---

[1] As of December 4, 2019, Columbia Asthma & Allergy Clinic, LLC, converted from a Washington limited liability company to a California professional corporation, and after the conversion the name of the company became Columbia Asthma & Allergy Clinic I, PC, pursuant to Articles of Conversion filed with the Washington Secretary of State.

[2] Pursuant to Fed. R. Evid. 201(b)(2), made applicable to bankruptcy cases pursuant to Fed. R. Bankr. P. 9017, the Court is requested to take judicial notice of the Proof of Claim filed as Claim no. 8-1, including the exhibits thereto.

[3] Chase also filed a proof of claim for $699,392, Claim No. 12-1, based on Debtor's execution of a Note under the U.S. Small Business Administration ("SBA") Paycheck Protection Program ("PPP"). The PPP loan is unsecured.

post-petition have been returned to the estate. That could account for the administrative

insolvency of the estate.

4.      Deutscher notes they have obtained relief from the automatic stay on May 22,

2023. Deutscher may exercise their state court remedies and recover the premises should they

desire.

5.      The United States Trustee ("UST") has moved to dismiss this chapter 11

bankruptcy case for lack of bankruptcy counsel, or alternatively, under §1112(b) for cause. The

UST's motion is set for July 27th before this court.

### Memorandum of Law and Argument

**A.      Conversion of this Case Would Not Benefit Creditors.**

A dismissal or conversion of a chapter 11 case requires a two-step analysis: first,

determine whether "cause" exists to dismiss or convert the chapter 11 case to chapter 7; and

second, which option (conversion or dismissal) is in the "best interest of creditors and the

estate." 11 USC § 1112(b)(1); *In re Marciano*, 459 BR 27, 48 (9th Cir. BAP 2011) *citing In re

Superior Siding & Window, Inc*., 14 F3d 240, 242 (4th Cir. 1994).

Section 1112(b)(4) specifies sixteen circumstances amounting to "cause," and the list is

not exhaustive. Cause "includes" enumerated grounds; *Hall v. Vance*, 887 F2d 1041, 1044, *see

also In re Moore*, 583 BR 507, 511-512 (CD CA 2018), and courts may look beyond §

1112(b)(4) and consider other factors and use its equitable powers to reach a proper result in

each case.

**1.      Conversion to Chapter 7 Benefits No One.**

Conversion to Chapter 7 will result in a Ch. 7 trustee being appointed to liquidate the

business. This would involve closing three medical practice locations, including two locations

that do not involve Deutscher. It is unfair to creditors, employees, and patients of the two, non-

Deutscher related locations, to lose the business, their jobs and preferred treatment option, when

those locations have nothing to do with Deutscher's claim. If anything, funds generated from the

two non-Deutscher locations could pay their claim for back rent.

Second, it is doubtful any creditors will be paid in a chapter 7 proceeding. Closing a medical practice is a complicated and expensive process. A checklist of tasks necessary to close a medical practice from Cross Country Locums (a placement service for medical providers) is attached as Exhibit 1. See, Linkon Decl. ¶ 4.

Closing will be much more difficult with the Dr. Jain out of the business and losing his historical knowledge of the operations. Without Dr. Jain, there is little chance of the business being sold and little to no good will value.

One of the larger expenses in closing a medical practice is ensuring the patient medical records, both paper and electronic, are properly stored, the correct authorities notified, and establishment of a procedure to respond to medical record requests post-closing.

The largest asset of the business are the accounts receivable. These are encumbered by Chase. Medical receivables are difficult and expensive to collect under the best circumstances. Without the benefit of the supervising physician to explain or correct coding or treatment description errors, a significant amount of the receivables could be uncollectible.

The next largest asset is the medical equipment, which is encumbered by Chase. Used medical equipment is difficult to sell and does not command prices remotely close to new items. While the effort to advertise and sell equipment is underway, administrative rent will continue to accrue for the yet to be vacated premises that could exceed the proceeds from the equipment liquidation. It is easily foreseeable that the administrative costs for these tasks, alone, will exhaust any recovery for creditors and leave an administrative deficit.

A conversion of this case to Ch. 7 offers nothing to Deutscher that what they already have. Having obtained stay relief last May, they may utilize state procedures to recover the premises. A Chapter 7 case creates a new set of administrative creditors whose claims are paid ahead of Chapter 11 administrative creditors, so in a liquidation, even Deutscher may receive nothing, all at the expense of creditors, employees, and patients at the two clinics with nothing to do with Deutscher.

1    Chase believes the best opportunity for creditors to recover anything is a confirmed

2    Subchapter V Plan. Short of that, this case should be dismissed, because by continuing to operate

3    one or more clinics, it may be possible for a future reorganization to succeed.

4                                    **CONCLUSION**

5    Chase respectfully asks the Court to deny the Deutscher motion to convert this case and if

6    Debtor cannot continue under Ch.11, the UST's motion to dismiss the case should be granted,

7    and for such other and further relief as is as is just and proper.

8

9                                    **WRIGHT, FINLAY & ZAK, LLP**

10

11   Dated: July 11, 2023                     By: _/s/ Steven K. Linkon, Esq._

12                                            Steven K. Linkon, Esq., SBN 101056
                                             Arnold L. Graff, Esq., SBN 269170

13                                            Attorneys for Secured Creditor, JPMorgan Chase,
                                             N.A

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

## <u>DECLARATION OF STEVEN K. LINKON</u>

I, Steven K. Linkon, declare as follows:

1.      I am an attorney duly admitted to practice before this Court. I personally know of the facts set forth herein, and if called as a witness, I could and would competently testify to the matters stated.

2.      Chase made seven business loans to Columbia Asthma & Allergy Clinic, LLC [4] and Columbia Asthma & Allergy Clinic I, PC (collectively, the "Borrower"). The loans are secured by Continuing Security agreements perfected by UCC 1 filings with the Washington and California Secretary of State. Chase's secured claim is evidenced by a Proof of Claim filed as Claim no. 14-1, including the exhibits thereto (the "Chase Secured Claim").[5],[6] The cumulative outstanding balance of the seven loans is 1,777,706.88. The seven Chase loans are secured by all assets of the Debtor.

**Background of the Case**

**3**.      The Debtor operates three medical clinics specializing in the treatment of Allergy and Asthma cases. The clinics are at (1) 3448 Mowry Avenue, Fremont, CA 94538; (2) 24 7677 Oakport Street, Suite 105, Oakland, CA 94621; and (3) 80 Arch Street, Redwood City, CA 94062. Deutscher is the landlord for the Fremont location.

3.      In the Debtor's Subchapter V Status Report and in other pleadings filed in this case, they explain that creditor Itria Ventures, LLC ("Itria") made a high interest rate loan to Debtor in exchange for their receivables. Itria began intercepting payments due Debtor from

---

[4] As of December 4, 2019, Columbia Asthma & Allergy Clinic, LLC, converted from a Washington limited liability company to a California professional corporation, and after the conversion the name of the company became Columbia Asthma & Allergy Clinic I, PC, pursuant to Articles of Conversion filed with the Washington Secretary of State.

[5] Pursuant to Fed. R. Evid. 201(b)(2), made applicable to bankruptcy cases pursuant to Fed. R. Bankr. P. 9017, the Court is requested to take judicial notice of the Proof of Claim filed as Claim no. 8-1, including the exhibits thereto.

[6] Chase also filed a proof of claim for $699,392, Claim No. 12-1, based on Debtor's execution of a Note under the U.S. Small Business Administration ("SBA") Paycheck Protection Program ("PPP"). The PPP loan is unsecured.

---

twenty plus insurance companies that pay medical claims to the Debtor on behalf of insured patients treated at Debtor's clinics. This interception of receivables continued post-petition and an adversary proceeding was filed. The Debtor's loss of its receivables to Itria was not halted for several months into the case. It is not clear that the Debtor's receivables wrongly intercepted post-petition have been returned to the estate. That could account for the administrative insolvency of the estate.

      4.      Closing a medical practice is a complicated and expensive process. A checklist of tasks necessary to close a medical practice from Cross Country Locums (a placement service for medical providers) is attached as Exhibit 1.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

      Executed June 10, 2023, at Bellevue, Washington.

_____
  Steven K. Linkon, Declarant

# EXHIBIT 1



# THE ULTIMATE CHECKLIST FOR CLOSING YOUR MEDICAL PRACTICE



**By:** Cross Country Locums
**Posted:** November 16, 2022 00:27 AM (GMT-04:00)
**Categories:** Provider Tips

## Closing Your Medical Practice? Here's What to Do.

Closing a medical practice can be complicated. There are many local, state and federal guidelines you must follow. Plus, depending on whether you're retiring, moving or selling the practice, the procedures for closing can vary.

To help make things a bit clearer, we've assembled an extensive checklist. Be sure to consult an attorney and follow all applicable laws in your location.

If you're like more in-depth guidance on any of these items and helpful tools like sample patient letters, see the references in our Resources section below.

## Checklist for Closing Your Medical Practice

- Assemble a team to help you close your practice, including an attorney and an accountant.
- Check all local, state and federal laws for closing a practice in your location.
- Tell your employees you'll be closing the practice.
  - Consider offering incentives to employees who agree to stay until closing.
  - Prepare to **hire temporary staff** in case employees find another job before closing.

Subscribe to RSS Feed

**Recent Posts**

Locum Tenens Tax Tips for 2023
Dentist Salary Report 2023
How Advanced Practice Providers Can Improve Wait Times
How-to Guide for Becoming a Dentist
Meet Terra Lynn K., CRNA

**Categories**

CCL Trends (17)
Client Tips (21)
Cross Country Locums News (43)
Provider Profiles (10)
Provider Tips (57)



- Ensure you notify patients within the proper timeline to avoid claims of abandonment.
  - Notify high-risk patients via certified mail with a return receipt.
  - Notify all other patients via regular mail.
  - Retain a copy of the notification in each patient's record.
- When you notify patients, include the following:
  - Closing date
  - Names of local physicians accepting new patients
  - Names of providers taking your over practice (if applicable)
  - Medical records storage information
  - Instructions for requesting records
  - Contact information for current and future questions, requests or concerns
- Notify and settle accounts/licenses with:
  - Local, state and federal regulatory entities
  - DEA
  - CMS
  - State medical board
  - Credentialing organizations
  - Licensing boards
  - Professional organizations
  - Colleagues and other physicians
  - Health insurance companies
  - Hospitals where you have privileges
  - Laboratories
  - Vendors
  - Radiology facilities
  - Medical suppliers
  - Utilities
  - Office suppliers
  - Laundry services
  - Housekeeping services
  - Hazardous waste services
  - Collection agencies
  - Magazine subscriptions
  - Internet providers
  - Property owner, if leasing
- Publish ads in local newspapers about your practice closing if your state requires it.
- Post signs in the office and verbally inform each patient and visitor that the practice is closing.
- Do not accept any new patients after you announce the closing.
- Begin referring new and existing patients to other providers.
- Collect on outstanding accounts.
- Hire a collection agency to settle up any accounts after the practice closes.
- Pay/settle all debts.
- Review, update and/or cancel your and your employees' insurance policies:
  - Health
  - Liability
  - Life
  - Disability
  - Workers' compensation
- Get tail coverage for delayed liability/malpractice claims.
- Contact a records storage company to arrange for HIPAA-compliant and timeline-appropriate storage of paper and electronic medical records and employee records according to local, state and federal laws.
- Notify your medical board regarding medical records location and storage details.
- Set up a mailing address for delayed medical record requests.
- Contact USPS for mail forwarding.
- Set up an answering service to take calls that come in after closing.
- Destroy, dispose of or store documents, as appropriate:
  - Financial records
  - Patient education materials



- Destroy prescription pads.
- Retain funds to cover any costs incurred after practice closes.
- Withdraw from partnership, if applicable.
- Deactivate assumed name of practice with appropriate authority, if applicable.
- File articles of dissolution with secretary of state, if applicable.
- Consult your attorney to facilitate sale, transfer or lease of practice, medical and office equipment, assets and property.
- Consult your accountant to settle tax issues.
- Contact the social security office if you are approaching retirement age.

# Resources for Closing Medical Practice

- **American Academy of Family Physicians – Closing Practice Checklist**
- **American Osteopathic Association – Closing a Practice**
- **Medical Economics – Closing Healthcare Practice Need to Know**
- **Cooperative of American Physicians – Closing Your Medical Practice**
- **Medical Association of Georgia – Starting Closing a Practice**

Get **locum tenens coverage** with Cross Country Locums.

---

**Cross Country Locums**

Client Rating

4.8

Based on **82** verified client ratings

Talent Rating

4.6

Based on **602** verified talent ratings

See all our ratings and testimonials >



---

      

©2023 Cross Country Locums | **Privacy Policy** | **Disclosures**



# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
4665 MacArthur Court, Suite 200, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled (*specify*): JPMorgan Chase Bank's Opposition to Landlord Deutscher's Motion to Convert Case to a Chapter 7 case; Memorandum of Law and Declaration of Steven K. Linkon in Support of

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 07/11/2023 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
  See attached service list.

☑ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 07/11/2023 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
  See attached service list.

☑ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 07/11/2023 | Jackie Powell | /s/ Jackie Powell |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                      **F 9013-3.1.PROOF.SERVICE**

**SECTION I – EMAIL SERVICE**

Michael Jay Berger, debtor's counsel, michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com

Kelly L Morrison, counsel for UST, kelly.l.morrison@usdoj.gov

United States Trustee, UST, ustpregion16.la.ecf@usdoj.gov

John-Patrick M Fritz, counsel for creditor, jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com

Gregory Kent Jones (TR), subchapter V trustee,  gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com

Michael I. Gottfried, creditor's counsel, mgottfried@elkinskalt.com, cavila@elkinskalt.com,lwageman@elkinskalt.com,docketing@elkinskalt.com

Arnold L Graff, interested party, agraff@wrightlegal.net, bkudgeneralupdates@wrightlegal.net;jpowell@wrightlegal.net

Jason J Granskog, creditor's counsel, jgranskog@bowlesverna.com, tohl@bowlesverna.com

Steven K Linkon, interested party, slinkon@wrightlegal.net

Joel Rapaport, creditor's counsel, jrapaportlaw@gmail.com

David M Riley, creditor's counsel, david.riley@us.dlapiper.com, davidzriley@gmail.com;david-riley-7344@ecf.pacerpro.com

Julie H Rome-Banks, creditor's counsel, julie@bindermalter.com

Tamar Terzian, PCO, tamar@terzlaw.com, sandra@terzlaw.com

**SECTION II – U.S. MAIL SERVICE**

**Judge**
Hon. Vincent P. Zurzolo
U.S. Bankruptcy Court
255 E. Temple St., Ste. 1360
Los Angeles, CA  90012

**Debtor**
Columbia Asthma & Allergy Clinic I, PC
43575 Mission Blvd., #716
Fremont, CA 94539